All rise. The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and its honorable court. The first case this morning is number 2010-1189 Lockwood v. Sheppard Mullin. Ms. Boyd. Thank you, Judge Newman. May it please the court, my name is Lee Crawford Boyd. I represent the patent holder and appellant, Mr. Lawrence B. Lockwood and his company, Panop IP. Members of the court, this case presents the important question of whether Congress intended to prohibit judicial claims for baseless and fraudulent reexamination requests. In holding that it did, the district court committed reversible error, specifically by not considering that Mr. Lockwood had pled the instigation of sham proceedings, which this court has held is not preempted by federal patent law. Well, we held that in the context of antitrust cases, which is hardly relevant here. Well, Your Honor, you held in Hunter Douglas, which was not a… That was not a holding in Hunter Douglas. That was a little bit of dicta that they threw out, a little bit of raw meat for lawyers like yourself. And you can cite it as, you know, conversation in Hunter Douglas, but please don't call it a holding because it isn't. Yes, sir. And this court has stated that patent law does not protect sham proceedings or allegations of fraud on the PTO, both in the Hunter Douglas case… Please said that after Buckman. Buckman was decided after the Hunter Douglas case, after Abbott, and after Dow Chemical. So, and Buckman was decided in 2005. However, Your Honor, I would not say that Buckman overruled the precedent of this court, which has looked at the objectives of Congress with regards to patent law, when determining whether or not state law claims are preempted. But think about what preemption is about. Preemption, the predicate for preemption, as the Supreme Court makes clear in Buckman, is that, have we decided that, has Congress decided that this particular entity ought to regulate this particular area? In other words, even if they say, even if the FDA says, this is okay with us, even if it's sham litigation, you can still do it. Preemption still governs. It's sort of odd for me to think about, yes, it's preempted, but we have an exception. Under what basis would we have preemption with an exception? Well, Your Honor, as you state, the preemption doctrine looks at the purposes of Congress in regulating or in establishing that entity, the FDA in Buckman, here the PTO. So, what basis, what guidance is there for Congress? I mean, if we think there's some preemption that governs here, the assumption is that the PTO is supposed to regulate its own, the conduct of people before it on its own. On what basis would we say that Congress thinks that but then has an exception for sham litigation? I would argue that Congress does not think that the PTO regulates the conduct that is alleged in this case. Not Hunter Douglas, but that there are no exceptions and that you can allege anything under state law and nothing is preempted. You may allege anything that does not conflict with the purposes and objectives of Congress as established in patent law. Buckman did apply that test in the context of the FDA and the FDCA and the MDA, where Congress established an entire panoply of enforcement mechanisms for the FDA, including civil injunction and forfeiture and prosecution. The PTO itself has stated in the Theresa Amicus brief before this court next week that it does not have that role. It does not police fraud as the FDA does. It does not police the baseless and sham instigation of reexam. In fact, the MPEP states it is not their congressional role, Your Honor. Does it not have the authority to do that? It does not have the congressional mandate or authority to no longer does it police fraud. It notes fraud that was brought to its attention, particularly in this case, as unresolved issue during reexam. And it does not address nor does it provide any remedy for fraud before the PTO during reexamination. Does it not have the authority to take back the license, to rescind the license practicing in the patent office? Yes, Your Honor. And the disciplinary statutes worked hand in glove with, for example, the remedy of inequitable conduct. And here it does not offer any remedy for the patent holder. So it does have the authority and it does police conduct before. It has the authority to rescind the practice, the licenses to practice before the patent office. And whether it chooses to exercise that authority in particular circumstances is not something any of us can second guess, right? So it does have the authority to regulate conduct before, right? Your Honor, it has the authority to discipline practitioners but not to offer a remedy for the harmed patent holder for the instigation of fraudulent and baseless reexamination petitions who suffer collateral harm. That disciplinary procedure, as the PTO itself has said in its own anarchist brief, is limited. It's a limited power to discipline. When Buckman cites the ability of the FDA, Chief Justice Rehnquist says, accompanying these disclosure requirements, which are the same as PTO has required, are various provisions aimed at detecting, deterring, and punishing false statements made during this and related approval processes. I'll read it again. Various provisions aimed at detecting, deterring, and punishing false statements made during this and related approval processes. That's what Chief Justice Rehnquist focused on with the FDA. 35 U.S. Code Section 32 says the director, referring to the PTO director, may, after notice of opportunity, exclude from further practice before the patent trademark office any person, agent, etc., etc., who shall, by word, circular letter, or advertising with intent to defraud in any manner, deceive, mislead, or threaten any applicant or prospective agent, or other person having immediate or prospective business before the office. It seems to me those are quite parallel powers to detect and punish for fraud or misrepresentation before the office. Why isn't that true? Are you saying the PTO doesn't want to do what the statute requires it to do? The PTO itself has said that its role is not to police fraud. It does not have subpoena power. It does not go to court and enforce fraudulent and inequitable conduct before it. It has stated that recently in its own brief. Is that in the context of inequitable conduct? This is inequitable conduct on the other side of the patent being issued. This is conduct before the PTO. And in Hunter-Douglas, the preemption test was named nominally the conduct-based test. And it is inconceivable, Your Honors, that the Buckman fraud on the agency would require preemption of all state law causes of action for misconduct or malicious prosecution before all 250 federal agencies. Each one of those agencies, the PTO, the FDA, have their own congressional mandate. We're not dealing with 250 agencies. We're not, Your Honor. We're dealing only with the PTO. With the PTO. And the PTO itself does not have the powers of the FDA or the EPA. It does not have that enforcement role. It is a separate. It has its patent law, has its own congressional objectives. And one of them is the strict duty of candor, which was not, which here we have alleged was breached. And the reexamination process itself does not offer a remedy for those harmed. It's been held by this Court in the Dow Chemical. So you're saying the PTO, if there's fraud on the agency, they can take away the license of the practitioner. Your concern is they just can't pay to the other party for its injury, can't compensate the party for its alleged injury. Yes, Your Honor. There is no recourse for it. Is that different than what happened at the FDA? I mean, wasn't that the argument in Buckman that, oh, no, no, no, no, no, because they can only regulate the person before them, but there's no, the injury of the receiving party can't be compensated? I thought that's exactly what the argument was in Buckman, and the Supreme Court just said too bad. Well, there were state law claims in Buckman that were held not to be preempted. This, the state law claim that was preempted was one that mirrored, identically, the fraud violation of the FDA regulations, which were specifically addressed by the FDA and its enforcement powers. That is not what happened here. But my question was, in Buckman, wasn't one of the arguments of the losing party that, oh, my God, no, you have to do this because there's no other way to compensate the people that were harmed if you just rely on the FDA's enforcement power? And the Supreme Court rejected that. Am I wrong in my reading of Buckman? To the extent that they had not preempted other state law claims, and they did not, and had preempted With respect to the state law claim they preempted in Buckman, was not the argument of the plaintiff that, no, you can't preempt this claim because the FDA doesn't have the ability to compensate us for our injury? And the Supreme Court rejected that claim. Am I right or wrong about that? You are correct, but it was in light of the fact that the FDA does have the enforcement powers to punish, deter in court with, quote, unquote, a fraud squad, which used to be, of course, available at the PTO, and now it is not. They do not have the subpoena power. They have left the adjudication of fraud to the courts. The PTO has stated that, and that is the balance that has been struck in patent law, not in FDA. They've said that with respect to inequitable conduct. Have they said that with respect to the re-exam procedure? With the re-exam procedure, this is a question before the court in this case. And our position is that when the Dow Chemical case and the Hunter Douglas case and even Abbott Lab, this court has said that state law claims against the patent holder for anti-competitive conduct after the patent is issued will not be preempted by federal patent law. That was not considered by the district court. That what happened here is an anti-competitive, which has been acknowledged even by this court, that sham litigation, sham proceedings, which was not considered in Buckman, is an anti-competitive move which was intended to harm the patent holder here. And the patent holder, unlike the third party who is harmed by the patent holder's anti-competitive conduct, has no remedy. Federal law provides no remedy. State law does. But it does not conflict with the purposes and objectives of the federal patent law, which is to protect the patent office from sham litigation, from fraudulent petitions, from inequitable conduct, which is to allow the courts to adjudicate those issues because the PTO has not taken on and does not have the mandate to do that. They've stated so themselves. What Judge Post was trying to point out was that there's no remedy for the individual who gets harmed by this fraud under the PTO procedure. But that was also true under the FDA procedure. That is, the people who got hurt by those bone screws did not have a remedy from the FDA. But that, the court said, was not the issue. The issue was who controls fraud on the agency. And the court said that's a federal preempted activity. The FDA gets it exclusively. It's a little difficult to distinguish that analysis from the PTO problem. Now, you raise an interesting question. Maybe the PTO doesn't think it ought to do what the statute compels it to do, which is to discipline people. PTO has a whole set of regulations about how to go about disciplining people who commit fraud on the agency. Are you suggesting that the PTO says it's not going to do that? Is that what you're telling us? No, sir. And I've even spoken to the PTO about that. The disciplinary procedures work hand in glove with the state law claims that are brought by the patent holder for compensation. There is no—and, in fact, the PTO has said there is no conflict with the disciplinary statutes. They have not preempted the entire field. And the preemption test requires a specific conflict. Are you quoting the PTO now in your statement? You said the PTO has stated. I'm referring to the amicus brief filed by the PTO in the Theracinth case, which we've brought to the court's attention and asked you to take judicial notice of, in which they specifically say that the Office of Ethics and Discipline, while it handles disciplinary functions of practitioners, does not provide for a remedy. And in re-exam, practitioners are not the only ones who come before the PTO. What kind of remedy are you referring to? A judicial remedy. Of damages? Yes, sir, a judicial remedy. Well, we know they can't provide a judicial remedy because they're not a court. Yes. And we know they can't provide damages. But neither is the FDA a court. If you read the concurring opinion of Justice Stevens in Buckman, you realize that that's exactly the issue on which Justice Stevens wrote. Actually, it's a dissenting opinion, but he called it a concurring opinion. Because he was concerned about the fact that by preempting the remedy in the FDA case, you don't do anything for the people who got hurt. But that didn't persuade a majority of the Supreme Court that there was not preemption. There's three things I'd like to say, maybe two. First of all, the FDA does have the remedy to go to court, and it does. The PTO does not. Secondly, the Buckman case did not deal with what we're dealing with here. Not only fraud on the agency, but the instigation of sham proceedings, baseless fraud sham proceedings, where there is no recourse for the patent holder for that kind of anti-competitive conduct, where there is recourse against the patent holder for third parties. In the case of Dow and Hunter Douglas, we had a state law remedy not in conflict with patent law when it was harm to third parties by the patent holder's conduct before the PTO. It seemed to me, and we haven't really touched on it, that a major issue here was which entity was in the best position to decide whether it was baseless and sham. And that issue is present. I agree it could be decided in the district court through brilliant experts and a lot of others. Doesn't that weigh significantly on having the PTO, at least in the first instance, decide whether, in fact, it was baseless, is totally devoid of any merit at all, going again, going back to perhaps to the antitrust cases, has been well-defined in circumstances where there could be significant financial consequences, and then perhaps to be followed by an action in district court. We haven't gotten to that. Yes, Your Honor. The PTO, in its own regulations, has stated that the courts are in the best position to adjudicate fraud on the PTO, not it. And, in fact, under the MPEP, they are required, when fraud is brought to their attention or baseless re-exam, as it was in this case, that they are not to resolve it. They are not to resolve that issue. But the fraud depends on determining a substantial question of patent law with the patent office and what the statute and what the public might consider appropriate substance for re-examination in order to fulfill the purposes of re-examination, which is to provide an administrative procedure for dealing with objections to patents one way or another. That, very hard to say that this is something that the district court can do, at least as well or as thoroughly as the patent office. Well, Your Honor, because the patent office is not, and this brings me to one of my second points, which I see I've gone far over, the patent office does not have an independent investigation of, in the same sense as, for example, the State Bar in California as under the independent investigation doctrine that was applied in this case, we believe in error. It doesn't have, it is relying on the duty of candor of those coming before it, particularly here where the patent statute requires a written petition. It requires a detailed explanation of applying the pertinency and manner of the purported prior art to the claims. Those are relied on by the PTO, and the PTO, as I've referred to, has stated just recently in its amicus brief that it relies on the duty of candor and that the entire patent system is based upon that reliance. And doesn't it also say that any perjury is a violation, there are criminal penalties for any violations, there might be criminal penalties for any violations of the duty of candor? Yes, Your Honor, they do. And so we've got a U.S. attorney or whatever. I mean, they don't prosecute criminal violations, certainly, but if they ascertain that, doesn't that suggest that they will report you to the U.S. attorney and it will be taken care of with respect to the under-government proceedings? Yes, Your Honor, and I would argue there is no conflict with the fact that the U.S. attorneys can prosecute perjury. I've done it myself, and it's definitely a power of the United States government, but it doesn't conflict with the permission of the judicial remedy for the one harmed. Here the patent holder who expended, and the patent holders expend tremendous resources defending an unwarranted, baseless read and petition. That's what preemption is all about. Preemption can mean, if you read Buchman, the FDA might decide, and it's within its authority to decide, we don't want to pursue these kinds of alleged frauds because we've made a policy decision that in doing so, it jeopardizes or it chills the rights of people to go forward. That's what preemption is all about. Preemption doesn't say you're preempted because you do everything that anybody else could do. Preemption is about making a determination whether or not something ought to be done or not be done, right? It's about the conflict between state and federal, and if there is no conflict, then the federalism principle and the preemption doctrine, based on the supremacy clause, says they must exist together. That doesn't mean that necessarily the federal position has to take care of every single potential harm that otherwise could be redressed through the state court proceeding. Preemption recognizes, does it not, that for policy reasons there might be a balancing so that certain harms may not be redressed, but that's the federal decision in that regard, right? Yes, it is. However, the states have always policed malicious prosecution and fraud, and these are state law claims that are not designed to interfere and to intrude into the congressional objectives of patent law. Our position is the congressional objectives of patent law are in place, and there is no conflict, and where there's no conflict, identified conflict, which was the burden of the police to show that there's a conflict, there's a congressional intent not to allow these claims to go forward, where they've allowed claims against the patent holder to go forward. We would argue this is a mirror image of the state law claims that have gone forward in injurious falsehood, in business disparagement, in the Dow Exxon case. It is not creating some new federal cause of action. These are in place, and the preemption of federal law and state law has already been held to not be disturbed, even if the PTO can discipline attorneys. Isn't there an inherent conflict between these state remedies and federal patent law for the very reason that you were able to get your state court decision saying that state courts couldn't handle this case because there is a substantial claim, the very reason you have jurisdiction under federal law at all, because there's a substantial question of federal patent law involved in this case, and that is a matter that ought to be decided exclusively by the federal courts or by the federal agency and not by state courts. Isn't that the inherent conflict that's in this case? Well, Your Honor, I hesitate to mix subject matter jurisdiction questions, which have been fully litigated at the state court level, and the question of preemption. In the Hunter Douglas case, you had both, and the first question, of course, is whether an element of the state law claims turns on the resolution of federal patent law. Here it does. The reasonable examiner standard and federal rules of decision must be applied to determine whether or not there was the instigation of a malicious reexamination with no basis at all. It must be decided by federal law, and the state court held, therefore, it arose under subject matter jurisdiction exclusively of the federal courts. The second question, then, is only the claims that pass the preemption test, that are not preempted by federal law, will survive, and in that case, of course, the state claim did survive. It arose under federal law. Federal patent law will be decided as a rule of decision to determine the outcome of the case, the liability, and yet there is still we have to determine, especially when there's an affirmative defense of preemption, whether or not federal patent law conflicts with that kind of remedy. Does it conflict with that kind of remedy? Here our position is it does not conflict with the PTO procedures to discipline. It does not conflict with the S&Q, the substantial new question standard. That remains in place. This is really a small subset, a small, small subset of cases that really do not meet that baseline Rule 11 malicious prosecution standard at the instigation of reexamination where they were baseless, they were done with slights of hand, misrepresentations, and reexamination was instigated maliciously without basis, a sham, and there was no remedy from the PTO. There is no remedy that has been established, although the Tenth Circuit has held that reexamination is subject to state law claims and has held that the duty of candor during reexamination is equivalent to the duty of candor during patent application. Rule 56 applies. They have held that, and since that case, there hasn't been some flood of litigation of state law claims surrounding it. Your Honor, at that time, the patent holder, the patent holder's attorneys, the district court all relied on the petition, the statements in the petition, and the duty of candor that is required by practitioners before the PTO and non-practitioners, which, of course, can't be disciplined by the PTO. I want to just state that there is no remedy, of course, no discipline of non-practitioners who apply, but everyone relied. It wasn't until a full investigation, it was brought to the attention of the PTO, that the electronic model reference had been concocted, the date had been changed, there had been a sleight of hand, it had been stated that it was in the petition, a printed publication, when it was not, and that information was known to the petitioner. All of that was brought to the PTO after the first office action, which was a reasonable, and the district court did err in making determinations of fact on reasonable reliance on fraud, which is not allowed in the Ninth Circuit, or in any circuit that I know of, to make these findings of fact, to not allow amendment where we had presented evidence. We had presented evidence of our expert. You've been focused, I think perhaps correctly, on the fraud, or the alleged fraud in this case. Would it be appropriate to conclude that that's really the gravamen of your case, is really fraud on the PTO, and that the state law claims under interference with prospective economic advantage, and to some sense the malicious prosecution, all those really, they're all subsumed under one central gravamen of concern. Wouldn't you say that's fair? No, Your Honor. I would characterize the gravamen as the malicious prosecution, the baseless instigation, which of course was not addressed in Buckman, and which is the equivalent of sham, which has been discussed many times by this Court in the context of antitrust. You would say the gravamen, then, is malicious prosecution. Yes, the unwarranted instigation of these proceedings with no basis in factor law. And that's your central thrust. Yes, Your Honor, the central thrust. There were slights of hand. There were misrepresentations as a sort of subsumed under the baseless instigation of re-exam that we believe we have the right to prove on the evidence. We have presented that evidence already to the district court with our expert, Professor John Thomas, with our technical expert, one ordinarily skilled in the art. We have presented reasonable reliance testimony, and none of that was allowed to go forward. And by bringing this appeal, of course, we asked for the opportunity to do that.  Because our burden is heavy at trial. Our burden is heavy. To show that it fell below reasonable standards is a heavy burden for what is acceptable and what is not acceptable. Okay, now let's hear from the other side. I think we've explored these issues. We'll save you some rebuttal time. Thank you, Your Honor. Mr. Clark. May it please the court, Gary Clark of Shepard, Mullin, Richter, and Hampton for appellees, Shepard, Mullin, Richter, and Hampton, Jonathan Hancockner, and Steve Hassid. We, of course, say that the district court got it exactly right in dismissing all five causes of action below. Dismissal of two of those causes of actions, the RICO claims, are not before the court. We think that the court this morning is focusing exactly on the right issue, which is the primary issue on appeal, preemption of both the malicious prosecution claim and the fraud on the patent office claim. Do you agree that there's a sham exception to the preemption doctrine? Under Buckman, we do not. We do not feel that an exception to preemption under the holding of Buckman makes any sense whatsoever. Because under Buckman, it's the federal agency itself which is charged with policing the very conduct which the other side says ought to be an exception. So it would completely eviscerate the holding in Buckman to say that the federal agency can police itself and we don't need state tort law claims. So what do we do with Hunter-Douglas, assuming it's not just dicta, or in our cases that include a sham exception? Are you trying to limit those to the inequitable conduct rubric? And if so, what's the basis for that distinction? Well, we first of all say to the extent there's any conflict between Buckman and Hunter-Douglas, obviously Buckman controls. But the very opening line of Hunter-Douglas is, I think, instructive. The opening line of Hunter-Douglas says, we are considering on this appeal to what extent federal patent law preempts a state cause of action prohibiting tortious activities in the marketplace. And Hunter-Douglas was considering the situation where there are tortious activities in the marketplace as to which any misconduct in the patent office is ancillary to the marketplace activities that the state law is properly trying to govern and police. However, Hunter-Douglas itself announces a principle which is completely consistent with Buckman. In the process of getting to the analysis in Hunter-Douglas of the marketplace activities, this court said, if the tort action is governed by federal patent law, then the plaintiff cannot invoke the state law remedy. This is a situation where the alleged misconduct is completely governed. But then they created a sham exception to that, did they not? Then we say there can be a sham exception in conjunction with a state tort claim, which involves other activity. If it's an intentional interference, a true intentional interference. Right. If it's an antitrust claim. They've alleged that here. We're just on a 12B6, right? I'm sorry, Your Honor. They've alleged sham here, correct? They've alleged sham, but they've alleged it in the context of a proceeding that was conducted entirely within the patent office, that was entirely subject to federal patent laws, is in the sweet spot of what the patent office can regulate. The panel this morning focused exactly on the right issue. How is that different than inequitable conduct? Well, the patent office is well empowered to regulate the conduct of those who appear before it. And while the overall regulatory scheme of the patent office perhaps is not as robust as the FDA, it is adequate to the policing that the patent office needs to do of those who appear before it. And, in fact, even the patent office, in the amicus brief, it's filed in the Therosense case, which is before this court and bank, and which was referred to in a supplemental filing by our opponents. While the patent office disclaimed the ability to police the type of inequitable conduct that often arises in infringement litigation, first because often the five-year statute of limitation is already run, and it's beyond their power for that reason, and because their subpoena power is limited to contested cases in the patent office, they say we just won't be able to police that kind of fraud. But the patent office of the United States in the amicus brief said this is different from a typical OED case where an aggrieved client reports to the agency the alleged misconduct and the facts necessary to prove it. Well, this might not be a client reporting it to the patent office, but this would have been Lockwood. If Lockwood, in fact, read the reexamination request, and we actually think that he did, and we think there's no excuse to say I didn't read what I received in the mail, but had he read it, then apparently he would have immediately realized the complaints he had, which he's now asserting in this case. And he or his lawyer could have reported it to the commissioner. They could have reported it to the OED. They could have filed a petition with the commissioner. They could have made the argument in their patent owner's statement if they'd filed one. We see from time to time when there has been inequitable conduct. I say we see when there has been finding a ruling of inequitable conduct through a routine patent action, that that then is followed by a state court disciplinary action in the state courts or within the state bar proceedings so that there's no question but that if the office goes as far as it can, whether or not it finds that there is a basis for some kind of disciplinary action within the limits of the actions, the remedies available to the patent office, that that isn't necessarily the end when there is actual fraud, actual sham litigation, even though the patent office has no authority to go as far as to provide remedies for such actions. But here we are in the district court. So why is the district court precluded from considering those issues? Well, Your Honor, yes. We do say that the district court, as an affirmative state law claim, is preempted and precluded from considering those issues. That's what I don't understand. If, in fact, one could, if this petitioner could go back to a state court after this is over from the patent office, and here we are in the district court in the federal system, why is that court precluded from considering all issues that can properly be raised against these defendants? Well, Your Honor, we think Buckman is clear that regardless of whether or not the patent office has considered these issues, sanctioned anybody, invoked whatever remedy is available in the patent office. And by the way, there is a remedy in the patent office. Let me come back to that. But still, the preemption applies. And if the cause of action in the district court or in the state court is nothing more than an allegation of misconduct that occurred in the patent office, then that cause of action is preempted. If, in fact, they could... That's the easy question. Nothing more than an allegation. If there's nothing more to the allegation, it's preempted. There's a more serious allegation than that. Well, I guess our position is if there's nothing more to the allegation other than there was misconduct in the patent office, and that's the sole basis for the state law claim, then it's preempted. If there's some other basis for the state law claim, such as there's an antitrust action or there's an interference action or something else, then there could be follow-on litigation and there could be a remedy and all that. But getting back to this issue of the remedy that's available here, Abbott Labs is a very instructive case and very similar to this one, analogous to this one on its facts. In Abbott Labs, there was an interference proceeding between Abbott and Brennan. During the course of the interference proceeding, one of the lawyers for Abbott falsified a statement or a declaration about an extension of time. The patent office became aware of that, and I don't know whether they sanctioned the lawyer, but they did, in fact, reverse the award of priority in Abbott Labs. And even though Abbott Labs factually, apparently, was able to establish priority for Brennan, the patent office said the remedy here is we're going to reverse that and give Brennan priority. And in fact, this court, in fact, said that very thing. It said the procedure themselves in the patent office by which the patent office reversed the priority between Abbott and Brennan, essentially as punishment for Abbott's misconduct, was the remedy. It was the remedy that was requested. Here a different remedy is requested. Here a financial remedy is requested. Well, and then this court said to the extent the abuse of process claim that was being pursued in federal court was nothing more than a restatement of the misconduct that they claimed had occurred in the patent office, that was preempted. There was no viable abuse of process claim. Even though the patent office had determined that misconduct had occurred in the interference, the sole remedy that the aggrieved party had was the remedy that they were given by the patent office, which was to reverse priority. And the abuse of process claim was held to be preempted. It seems to me, counsel, that you might argue that the question comes down to whether giving a financial remedy to the state court claims strikes the right balance between competing statutory objectives that exist under the patent law and whether that balance should be left to state courts or whether that balance should be undertaken exclusively by the federal system, basically through PTOs handling these cases. For example, the competing values under the patent law are promoting innovation by providing a protected period of time for a patentee versus encouraging competition in the marketplace and design around. And that the question is whether the reexamination process, if fraudulently invoked, interferes with that balance and who is going to make that judgment. That seems to me to be the issue that Buckman is trying to wrestle with and to say that it's really a federal balance that needs to be struck and not one that can be struck by state court remedies. Why wouldn't that argue for preemption under the federal system better than arguing about inequitable conduct? Inequitable conduct is not a statutory right. It's a court-created activity, which of course ends up in the courts, whereas this whole reexamination process and the punishment for fraud before the PTO is statutory. Do you disagree with coming at it from that viewpoint? Plaintiffs did not identify any cause of action that they could pursue that wasn't preempted or have other problems with it, whether it's a malicious prosecution claim that has a favorable termination requirement that they have difficulty showing that they meet. If there were a state law cause of action that they could pursue in which it didn't involve strictly as its sole element the conduct, the alleged misconduct in the patent office, then there could be a financial remedy for them. Although this is not an answer in the general case, there is an answer in this case, which is that the panel asked, why did you stipulate to stay? And then they settled the district court litigation They have no real good answer for that because since the litigation had been stayed it was going to cost them nothing just to leave it sit there. They could have left that litigation pending. They could have gone through the reexamination proceeding. Ultimately they did prevail, as they say in the reexamination proceeding. They would have gone back to the district judge in the infringement litigation. The stay would have been lifted. The case would have gone forward. Had they proved that, in fact, in the litigation that their patent was infringed, that it was not invalid, and that they were entitled to damages, they also could have sought from the district court whatever sanctions were available for exceptional case. But that relates to damages. Why does that relate to preemption? I'm sorry? So that relates to possibly the amount of damages to which one might be established. But why does it relate to preemption? Well, it's a federal cause of action. It's another federal claim. There's not going to be any preemption between the federal patent infringement claim and what happened in the patent office. And all I'm arguing, Your Honor, is that had they left that case pending, they could have used the events that they're now using before this court, they could have used those in front of the district judge in the patent infringement litigation and argued for exceptional case, argued for willfulness, argued for increased damages. They themselves voluntarily agreed to stay and then settle and dismiss the case below, giving up those options that they had. Now, obviously, that circumstance wouldn't obtain in every case because there's not always co-pending litigation. Wait, wait, wait. I don't understand. I guess, like Judge Newman, I think I'm confused. I mean, that's something you might argue if this case ever goes to trial in terms of the level of damages. But I'm not sure. Is your point that there is, outside of the state court action, there is an ability for them to, in the federal system, for them to obtain damages, and that's somehow relevant to whether or not there's preemption? There is no precedent, there is no cause of action for them to seek damages other than what I've just described. That's right. There is not. And, you know... Let me pick up on something. Shift the focus a little bit since you answered that question, I think, correctly. Do you agree that the gravamen of this whole set of litigation at the state level is the malicious prosecution concept, that that's the central thrust of this whole matter? Let's focus on the statute of limitations issue for just a minute. How do you understand the California statute of limitations to apply? To the malicious prosecution claim? To the malicious prosecution claim. Well, there's an interrelationship between the preemption issues and the statute of limitation issues. So bear with me a second. The reexamination is a two-phase proceeding. There's the request, and then the request is granted. There's the actual reexamination. In their malicious prosecution claim, they kind of jumble those two together and they don't make it exactly clear what they're arguing about, but mainly they're arguing that we lack probable cause to assert that the patent would ultimately be held invalid at the end of the reexamination. Because of misstatements in the reexamination request according to their position. Fine, Your Honor, I'll accept that. Just looking at the point at which the statute of limitations might be considered to commence. Well, what we say is this. If the focus is on whether there was probable cause as to the ultimate invalidity of the patent, that directly, apart from Buckman, that is absolutely in direct conflict with the reexamination statutes because the reexamination statutes and the regulations and all the procedures adopted by the Patent Office make clear that you don't have to have a prima facie case of invalidity to file a reexamination request. And if this Court were to hold that a malicious prosecution claim could be pursued on the premise that the requester didn't have probable cause to believe that ultimately the patent would be held invalid, that would completely eviscerate the reexamination process. What I was trying to say is that that isn't their argument. Their argument is that there were misstatements on which the Office relied. So, let's focus then on the request part of it and the issue of substantial new question. That has to be the only thing that they could possibly argue might not be preempted. We think it is preempted under Buckman. But if they were allowed to pursue lack of probable cause for a substantial new question of patentability as opposed to the ultimate invalidity, then they have a terrible problem with their malicious prosecution claim. First of all, where is the favorable termination requirement met by the proceedings in the Patent Office? The request was granted. If that's a termination, it terminated in our favor, not in their favor. Ultimately, yes, they prevailed in the reexamination, but that wasn't an affirmance or reversal in any way of the substantial new question issue. The Patent Office moves on from the substantial new question issue and at the end of the reexamination, they're just concerned with the invalidity of the patent. Did I understand you telling me that if the request was granted based on false information, that that's a termination in your favor? Yeah, I thought that's what you said. Well, it's certainly not a termination in their favor. Which is required for a malicious prosecution claim, Your Honor. And, you know, you're assuming, as I know we must, that there was misconduct, but nonetheless I'm saying that the request, the fact that the request granted certainly was not a termination in their favor, which is a requirement for a malicious prosecution claim under California law. So that's the first problem they have. The second problem they have, of course, is independent investigation. There are two places where you can have a termination under California law. One is when the request gets granted for reexam, and the other is when the reexam is completed and the patent is upheld. They won on both of those. They won on both of those? Yeah. How did they win on the request phase? No, I'm sorry. We won on the request phase. You were on the request end. So you won on the request end. Oh, that's your point. Right. You won the request termination, and if that's the termination, they can't use it, and then your argument is, well, what about the termination in their favor? At the end of the process? Yeah. Well, then I'm saying that that's preempted. That's preempted, because if that's going to be the basis for your malicious prosecution claim, if this Court is going to say that a state tort action can be maintained for malicious prosecution on the basis that there was no probable cause by the requester at the beginning, to believe ultimately that the patent would be held invalid, that cuts exactly against the entire reexamination scheme. You don't have to have probable cause. I thought we were talking here, this question before you involved the statute of limitations. Okay. Can you just identify with me, the District Court said barred by the statute of limitations for malicious prosecution. That's right. Because of the ex parte exception. What trigger date do we need to agree with in order to establish? Because the request phase of this proceeding was ex parte, the favorable termination provision doesn't apply. And wisely so. For the reason I've just said, they can't point to a favorable termination on their behalf when the request was granted. But we say that there is no favorable termination requirement because it's ex parte. But what goes with that is that that's the moment in time when the statute of limitations starts to run. That's what the court below held, and we think that's the proper result. That's the point at which they were injured. So if we were to conclude either that the statute of limitations didn't start to run until the completion of the reexam procedure, or that they had some exception to this, then we can't affirm on the statute of limitations. That's right. If you determine that, that's right. We think that would be error, but yes. Okay. Any more questions for Mr. Clark? Any more questions? Thank you, Mr. Clark. Ms. Boyd, you have three minutes to rebuttal. Yes, ma'am. First, to address the statute of limitations for the malicious prosecution, which is the gravamen of our claim here, as a matter of policy and as a matter of law, it would be error to set the accrual of the malicious prosecution at the granting, the initial grant of reexamination. First of all, for policy reasons, the favorable termination element is to protect having to run to court when you have a grant of reexamination, and then, of course, wait for the final outcome, which will be the evidence that, indeed, there was no probable cause. Judge Margaret Grenot, on the amicus brief of a former appellate judge in California, discussed the fact that the favorable termination element has never been abrogated. And particularly here, in the ex parte argument made by counsel, Mr. Lockwood was required, under patent examination, to defend his property rights. He was required to... His property rights were put in issue in an adversarial proceeding, which required his input to defend. And he expended, of course, a tremendous amount of resources doing that, as all patent holders must, when their reexamination has been granted. So, you know, it's our position that it was error to set that accrual point at the initial grant when, indeed, the evidence is in the making throughout the reexamination. And, indeed, if the patent has been rejected or any claims have been rejected, there would be no malicious prosecution claim undercutting that lack of probable cause. So we believe that was error. I would just like to speak very briefly that the district court did not consider the marketplace anti-competitive harm that was done during the sham and fraudulent reexamination requests, which were made during enforcement litigation. So the stay that was granted, which is very common, of course, was something that was between competitors. And the reexamination, the basis reexamination, was done to cause harm in the marketplace and to cause harm to a competitor. That is something that the preemption doctrine in the context of patent law was not considered by the district court, and that was error. Can I ask to go back to the earlier point, because I'm a little confused. Your suggestion as to what the statute of limitations not running to the conclusion of the reexamination procedure goes to, I think, the argument you were making, well, we wouldn't have had a cause of action on malicious prosecution if ultimately the patent or certain claims had gone down. I don't understand why that is so. If they fraudulently, allegedly, fraudulently misrepresented documents, which got them over the initial hurdle, even if there were some other basis for abrogating the patent, some other anticipatory reference or something else, I don't understand why your cause of action, if there's any validity to it, would have disappeared because of that. Under the law of malicious prosecution, if there is not an acquittal, for example, in a criminal case, or if there's not a favorable termination at the end of all the proceedings, and even after appeal, there is no cause of action. The elements have not been satisfied. And as I said, that's a matter of policy, good policy, because we're not going to have protective suits. Even if they made up new documents that weren't even in existence, if at the end of the day, somehow, your patent fails on a re-exam, then any potential for malicious prosecution of fraud goes away. Well, Your Honor, not fraud. Fraud is a different statute of limitations. The fraud claim arises at the time of the fraud or at the time of discovery. We're speaking strictly, the favorable termination element applies to the malicious prosecution, not the fraud. We don't mix those statute of limitations. We have averred that the district court has committed error in determining questions of fact on what Mr. Lockwood did or didn't do as a matter of reliance. We allege that's error. Just to go back to, of course, the gravamen of this appeal, which is the preemption doctrine, I think I stated the marketplace conduct, and I would just like to bring to the Court's attention, because it's been mentioned many times, that the OED and the disciplinary procedures do not address third-party requesters who are not patent practitioners. So there is that difference. This is not something that, of course, the Patent Office has any claim over when we have third-party requesters. And in the Tenth Circuit has held that the third-party requesters are still held to the strict duty of candor before the Patent and Trademark Office. And in closing, of course, I would like to highlight the overall question, which is whether there's going to be, Congress intended for there to be no recourse for the patent holder. No recourse when he is subject to the baseless and fraudulent reexamination requests that rob him of his patent rights, place a cloud on his ability to use, in that limited amount of time granted by the Constitution, his property rights. We submit that there is no conflict with federal patent law or the purposes of Congress. And we ask, based on today's oral argument, our briefs, the briefs of the amicus in support, that you reverse the judgment below and allow these claims to proceed on the merits. Thank you. Thank you, Ms. Boyd. Mr. Clark, the case is taken under submission.